# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTONIO FULLER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:10-01064 |
| ) | Judge Sharp |
| DWIGHT BARBEE, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Petitioner, Antonio Fuller, an inmate at the Charles Bass Correctional Facility in Nashville, Tennessee, is serving a fifty-six year sentence for his involvement in a home invasion robbery and kidnapping. He has filed a *pro se* Petition and Memorandum under 28 U.S.C. § 2254 (Docket Nos. 1 & 2), challenging the legality of his confinement on the grounds that counsel allegedly was ineffective, and that his sentence was unlawfully enhanced in violation of Blakely v. Washington, 542 U.S. 296 (2004). The State has filed an Answer in opposition to the Petition (Docket No. 16), to which Petitioner has replied (Docket No. 18).

Having fully considered the record, the Court finds that an evidentiary hearing is not needed in relation to Petitioner's ineffective assistance of counsel claims, and that Petitioner is entitled to no relief on those claims. The Court also finds, however, that further briefing is required on Petitioner's Blakely claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2000, Petitioner and Marcellus Betty broke into a townhouse in Goodlettsville, Tennessee and committed assorted criminal acts. After trial, a Davidson County

2

Criminal Court jury convicted Petitioner and Betty of aggravated burglary, aggravated robbery, especially aggravated kidnapping (two counts), evading arrest, and reckless endangerment. Petitioner was sentenced to ten years for aggravated burglary, eighteen years for aggravated robbery, thirty-five years for each especially aggravated kidnapping, seven years for evading arrest, and four years for reckless endangerment.[1]

The events leading up to Petitioner's convictions and sentence were described by the Tennessee Supreme Court as follows:

> During the early morning hours of December 22, 2000, the defendants, Antonio Fuller and Marcellus Betty, broke into the Goodlettsville townhouse of George Woods, III, and Quantrissa Sherrell Woods. Mr. Woods was sleeping, and Mrs. Woods was nursing their ten-day-old son. Fuller and Betty ran into the bedroom. Betty approached Mrs. Woods' side of the bed, pointing a rifle at her and the baby. Fuller walked to the other side, aiming a shotgun at Mr. Woods. Betty demanded, "Where's the dope? Where's the money?" Mrs. Woods responded, "We don't have any drugs or money. You know, we just work. All the money we have is up on the dresser, about seventy dollars." Betty threatened to kill the couple if they did not give him drugs and money.
>
> When Betty asked where "Little Jason" was, Mr. Woods realized that the men had broken into the wrong townhouse. Mr. Woods told them that Little Jason's cousin lived in another townhouse in the complex and drove a car similar to his. Betty demanded that Mr. Woods show them the correct townhouse. Betty took the seventy dollars from the dresser and ordered Fuller to bind the couple with duct tape. Mrs. Woods' mouth was covered, and her arms were taped behind her. Mr. Woods' arms and legs were bound, and he was forced outside the townhouse. Mr. Woods estimated that forty minutes passed from the time the men entered the townhouse until Mr. Woods left with them.
>
> Soon thereafter, Mrs. Woods' five-year-old daughter ran into the bedroom. Because Betty had warned Mrs. Woods that he knew she had a child in the other room, Mrs. Woods told her daughter, "You have to go back to your room and lay down and not say anything, because, if they catch you in here, they're going to kill us, thinking you've called the police." Then, with her arms still bound behind her,

---

[1] The trial judge ordered partially consecutive sentences, resulting in an effective sentence of fifty-six years.

> Mrs. Woods called 911 from a phone on the nightstand. Mrs. Woods hung up before her call was answered, however, fearing that Betty or Fuller was still in the townhouse. When the 911 dispatcher called back, Mrs. Woods answered and quickly explained the situation. Mrs. Woods was able to communicate despite the duct tape still covering her mouth because she had licked her lips before the tape was applied, thus loosening it. After hanging up the phone, she got back into the bed in the same position as the men had left her.
>
> After Mr. Woods showed Fuller and Betty where Little Jason's cousin lived, the three men returned to the Woodses' townhouse. Betty took Mr. Woods up to the bedroom and placed him in the bed with his wife, who remained bound. Betty again threatened the couple, stating, "I'll kill you if you mess my sting up." Betty repeated the threats as he went back and forth sticking the barrel of the rifle in each victim's mouth. Betty ordered the couple to face the wall, and then he fled.
>
> Mr. and Mrs. Woods worked together to remove the duct tape from each other. When free, the couple packed a bag and gathered their children. They were running toward the door when the police arrived. Upon seeing Fuller and Betty drive out of the parking lot of the complex, an officer attempted to pull them over. Both men were apprehended after a high-speed chase.
>
> Following a jury trial, Fuller and Betty were each convicted [on all charges against them].

State v. Fuller, 172 S.W.3d 533, 534-36 (Tenn. 2005).

After sentencing, Petitioner appealed his convictions and sentence to the Tennessee Court of Criminal Appeals. That court affirmed Petitioner's convictions and sentence, save for one of the especially aggravated kidnapping counts. The appeals court concluded that the conviction for both aggravated robbery and especially aggravated kidnapping in relation to Mrs. Woods violated the principles set forth in State v. Anthony, 817 S.W.2d 899, 305-06 (Tenn. 1991) that a confinement, movement, or detention incidental to an accompanying felony (like robbery) is not itself sufficient to support a separate conviction for kidnapping. State v. Fuller, 2004 WL 1562546 (Tenn. Crim. Ct. App. 2004).

4

Petitioner sought further review in the Tennessee Supreme Court on the convictions which were affirmed, but his request for permission to appeal was denied. However, the State was granted permission to appeal the reversal of Petitioner's conviction on the especially aggravated kidnapping count involving Mrs. Woods.

The Tennessee Supreme Court reinstated Petitioner's especially aggravated kidnapping conviction involving Mrs. Woods. State v. Fuller, 172 S.W.3d 533 (Tenn. 2005). In doing so, the court observed that Anthony had been modified by State v. Dixon, 97 S.W.2d 532, 535 (Tenn. 1997) which held that the "Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping, where the only restraint utilized was that necessary to complete the act of rape or robbery." Since Mrs. Woods was bound after the seventy dollars was taken from the dresser, and she and Mr. Woods were questioned about Little Jason's residence while bound, Anthony did not bar Petitioner and his co-defendant from being convicted of both the aggravated robbery and especially aggravated kidnapping of Mrs. Woods. With this ruling, Petitioner was placed in the same position as immediately after trial – his convictions and sentence were affirmed.

Petitioner then filed a petition for post-conviction relief in the state court, claiming that both trial and appellate counsel were ineffective. Specifically, Petitioner asserted "trial counsel's assistance was ineffective because he failed to (1) object to the trial court's instruction to the jury concerning the lesser included offense of aggravated kidnapping; (2) object to the trial court's consideration of Petitioner's prior convictions in determining his sentencing range and the length of his sentence; and (3) failed to raise these issues in the motion for new trial," and appellate counsel was ineffective because he failed to raise these issues on appeal. Fuller v. State, 2010 WL 4674276

at *1 (Tenn. Crim. Ct. App. 2010). Additionally, Petitioner contended that the length of his sentence violated Blakely's proscription that any fact (other than a prior conviction) which increases the penalty for a crime beyond the prescribed statutory maximum must either be admitted by a defendant or decided by a jury in its verdict. The trial court rejected Petitioner's claims and that decision was affirmed on appeal.

The present habeas Petition followed. Petitioner raises five claims for relief, three of which – claims one, two, and five – allege the ineffective assistance of counsel, and two of which – claims three and four – raise sentencing issues under Blakely.

With regard to his ineffective assistance claims, Petitioner contends that (1) counsel was ineffective in failing to object to, and appeal, an allegedly incomplete lesser included offense instruction on the especially aggravated kidnapping charges; and (2) trial counsel was ineffective when he failed to object to Petitioner's classification as a multiple offender at sentencing. He also claims the state court's conclusion that counsel was not ineffective was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984).

As for his sentencing claims, Petitioner asserts that the state court's failure to follow Blakely while his case was pending on direct appeal deprived him of due process. Relatedly, he asserts that he received sentencing enhancements on the basis of "judicial fact-finding."

## II. **GENERAL STANDARDS GOVERNING REVIEW OF § 2254 PETITIONS**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 405 (2000).

The state court's factual findings are presumed to be correct and they can be contravened only if Petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1). Petitioner is entitled to an evidentiary hearing if he alleges sufficient grounds for issuance of the writ, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing. Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002).

Further, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (citation omitted). Claims which are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." Alley v. Bell, 307 F.3d 380, 388 (6th Cir. 2002).[2]

---

[2] "In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." Id. at 386.

## III. LEGAL ANALYSIS

As indicated, for review by this Court to be appropriate, Petitioner must have exhausted each of his claims. Here, the State has conceded that, to the extent it understands his claims, Petitioner fairly presented each to the state court. Accordingly, the Court turns to the merits of Petitioner's claims.

### A. Ineffective Assistance of Counsel – Claims One, Two and Five

To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced him. Strickland, 466 U.S. at 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Strickland, 466 U.S. at 697. A court need not address both parts of the Strickland test if the Petitioner makes an insufficient showing on one. Id.

In Strickland, the Supreme Court made clear that "[j]udicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland. 466 U.S. at 689. Therefore, a court considering a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). After all, the Constitution requires that a defendant receive a fair trial, not a perfect one since "there can be no such thing as an error free, perfect trial[.]" United States v. Hasting, 461 U.S. 499, 508-09 (1983).

**1.** *Lesser Included Offense Instruction*

Petitioner and Betty were charged in Count 3 with the especially aggravated kidnapping of Mr. Woods (in violation of Tenn. Code Ann. § 39-13-305) by substantially interfering with his liberty through the use of a deadly weapon, or the display of an article which led Mr. Woods to reasonably believe that the article was a deadly weapon. Virtually identical allegations were charged in Count 4 with respect to Mrs. Woods.

Tennessee law contains provisions for aggravated and especially aggravated kidnapping. Aggravated kidnapping, a Class B felony, is a false imprisonment under Tenn. Code Ann. § 39-13-302 committed

> (1) To facilitate the commission of any felony or flight thereafter;
> (2) To interfere with the performance of any governmental or political function;
> (3) With the intent to inflict serious bodily injury on or to terrorize the victim or another;
> (4) Where the victim suffers bodily injury; or
> (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

Tenn. Code Ann. § 39-13-304(a). Especially aggravated kidnapping, a Class A felony, is a false imprisonment under Tenn. Code Ann. 39-13-102

> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;
> (2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement;

9

>    (3) Committed to hold the victim for ransom or reward, or as a shield or hostage; or
>    (4) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-305(a).

In this case, the trial court instructed the jury on the elements of especially aggravated kidnapping accomplished with a deadly weapon or the display of an article which would lead a victim to reasonably believe it to be a deadly weapon. The jury was also instructed on the lesser included offenses of facilitation of especially aggravated kidnapping accomplished by means of a deadly weapon, aggravated kidnapping committed while in possession of a deadly weapon, and facilitation of aggravated kidnapping while in possession of a deadly weapon.

Petitioner argues the instructions were deficient because the jury was not given an instruction on aggravated kidnapping which is committed to facilitate the commission of a felony under Tenn. Code Ann. § 39-13-304(a)(1). He argues that counsel's failure to request such an instruction and to raise the absence of such an instruction on appeal constitutes ineffective assistance of counsel. He also claims that the state courts erred in failing to recognize that counsel's alleged deficiencies in this regard deprived him of due process of law and the right to a jury trial. For a number of reasons, the Court rejects those arguments.

"A lesser-included-offense instruction is required only where 'the facts of the case and the laws of the State warrant such an instruction.'" Smith v. Bradshaw, 591 F.3d 517, 527 (6th Cir. 2010); see, Richie v. Workman, 599 F.3d 1131, 1136 (10th Cir. 2010) ("Whether an offense is a lesser-included offense is a matter of state law"). Here, it is not altogether clear that aggravated kidnapping to facilitate the commission of a felony is a lesser included offense of especially aggravated kidnapping accomplished with a deadly weapon under Tennessee law. The Tennessee Court of Criminal Appeals on post-conviction review in this case merely assumed that it was for the

10

sake of argument, Fuller, 2010 WL 4674276 at *4, and a subsequent decision by that same court can be read as suggesting that Tenn. Code Ann. § 39-13-304(a)(1) is not a lesser included offense of Tenn. Code Ann. § 39-13-305(a)(1). Coffelt v. State, 2010 WL 4396496 at **9-11 (Tenn. Ct. Crim. App. 2010). It is not ineffective assistance of counsel to fail to argue a point of law which is unclear. See, Lott v. Coyle, 261 F.3d 595, 609 (6th Cir. 2001), *cert*. denied, 122 S. Ct. 1106 (2002).

Additionally, Petitioner has failed to show that the lesser included charge he proposes would have been appropriate. The Supreme Court has explained that a criminal defendant is entitled to an instruction on a lesser included offense if (1) "the elements of the lesser offense are a subset of the elements of the charged offense," Schmuck v. United States, 489 U.S. 705, 716 (1989), and "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973).

Petitioner argues that "the very essence of the theory of the case" was that the "kidnapping offense could have been committed to facilitate the commission of the aggravated robbery." (Docket No. 3 at 3). He also asserts that "[t]he testimony clearly show that a rational jury could have found that [Petitioner] entered the home in question for the purpose of committing a robbery." (Id. at 4). In his reply brief, Petitioner also claims that "counsel knew the theory of the case . . . was to rob a drug dealer." (Docket No. 18 at 3).

The problem with those arguments is that they are at odds with Petitioner's trial testimony and trial counsel's testimony at the post-conviction evidentiary hearing. At trial, Petitioner testified that he participated in the crimes at issue because he was afraid of Betty, and that Betty had threatened his life if he failed to cooperate . Indeed, at the very start of his testimony, Petitioner told the jury that he did not participate in the crimes of his own free will, and on cross-examination testified he "wasn't going to rob nobody" and "was trying to prevent a robbery." (Docket No. 17-4,

11

Trial Trans. at 385 & 440-441). Similarly, during the post-conviction proceedings, counsel testified that "our theory in trial was, see, [Betty is] the bad guy" and Petitioner "was just an [sic] unfortunately along for the ride[.]" (Docket No. 17-12, Evid. Hrg. at 11).

The theory of defense essentially was that Petitioner was an unwilling accomplice. Counsel cannot be faulted for failing to request an instruction that the kidnapping was committed to facility a robbery since that would play into the notion that Petitioner willingly intended to rob someone and participate in the crimes.

Moreover, the robbery in this case was the taking of the seventy dollars from the dresser, but the criminal activity did not end when the robbery was completed. After the money was taken, Mrs. Woods was bound, Mr. Woods was forced into a car to go look for Little Jason's residence, Mr. Woods was brought back to the house and bound, and Mr. and Mrs. Woods were threatened (with Betty sticking a gun in their mouths) that if they told anyone about the crimes they would be killed. Given these facts, it cannot be said that the kidnappings were done to facilitate a robbery since the acts which constituted the kidnappings occurred after the robbery.

In this regard, Petitioner's contention that the state courts "invaded the province of the jury" by engaging in impermissible fact-finding (Docket No. 18 at 2) is unsupported by the trial record and, in any event, not a basis for habeas relief. On appeal, the Tennessee Supreme Court wrote that "[t]he proof showed that Fuller and Betty had already taken the seventy dollars from the dresser before binding Mrs. Woods with duct tape," Fuller, 72 S.W.3d at 537, and the Tennessee Court of Criminal Appeals on post-conviction review stated that "our supreme court found that Petitioner did not bind Ms. Woods with duct tape for the sole purpose of facilitating the robbery" because "the evidence clearly showed that the money was taken from the bedroom dresser prior to her

12

confinement." Fuller, 2010 WL 4674276 at *4. Petitioner is hard-pressed to complain about such a "finding" given the following exchange during his cross-examination:

> Q. When Mr. Betty took the money off the t.v., or off the dresser, were the victims already duct taped or did that happen afterwards?
>
> A. They wasn't duct taped then. He was still talking and yelling – yelling and stuff like that.
>
> Q. And it was Mr. Woods that said there's money on the dresser or on the t.v.
>
> A. I can't remember which one said it. It was probably Mr. Woods. I don't –
>
> Q. But they were duct taped at this point?
>
> A. Not at this point they wasn't.
>
> Q. Did Mr. Betty get the money that was there? Right?
>
> A. Yes, ma'am.
>
> Q. And at what point did you duct tape the two victims?
>
> A. I –
>
> Q. Did it happen after he gets the money?
>
> A. Well, he – yeah he got the money . . .

(Docket No. 17-4, Trial Trans. at 449-450). In any event, a state court's factual findings are presumed to be correct unless Petitioner shows by clear and convincing evidence those findings are erroneous, 28 U.S.C. § 2254(e)(1), and Petitioner has not made that showing here.

Petitioner also argues that "[a] reasonably, properly instructed jury might have concluded that the evidence was insufficient to establish especially aggravated kidnapping based on that there was no intent and *purpose* to commit serious bodily injury or death upon the victims in regards to the 'deadly weapon' feature of the statute." (Docket No. 3 at 15, italics in original). However, while Tenn. Code Ann. § 39-13-305(a)(4) speaks in terms of whether "the victim suffers serious bodily

13

injury," the statute is written in the disjunctive, and an especially aggravated kidnapping can be "[a]ccomplished with a deadly weapon." Id. § 39-13-305(a)(1).

Regardless, whether the "purpose" of the crime was to commit serious bodily injury or not says nothing about the propriety of an instruction regarding the commission of a crime to facilitate a felony. Both the aggravated and the especially aggravated kidnapping statutes contain language about the possession or use of a deadly weapon. The post-conviction appeals court and the court in Coffelt explained that a jury which convicts a defendant for using a deadly weapon to *accomplish* an especially aggravated kidnapping necessarily has rejected the lesser offense of aggravated kidnapping while merely *possessing* a weapon and, by implication, aggravated kidnapping merely to commit a separate felony which requires no use of a deadly weapon. Coffelt, 2010 WL 4396496 at *11; Fuller, 2010 WL 4674276 at *4. It is for the state courts to interpret and define state law, not federal courts on habeas review. See, White v. Steele, 602 F.3d 707, 711 (6th Cir. 2009); Jenkins v. Dailey, 348 Fed. Appx. 114, 118 (6th Cir. 2009).

### 2. *Multiple Offender Status*

Petitioner argues he was denied the effective assistance of counsel at sentencing because counsel failed to object to Petitioner's classification as a multiple offender. Petitioner spends little time in his brief on this issue and no time in his reply, but it appears to be his contention that, since he was sentenced as a Range I offender on unrelated drug charges after his arrest in this case, he was entitled to be sentenced as a Range I offender in this case as well.

Felonies in Tennessee are broken into five categories – Class A to Class E. Tenn. Code Ann. § 40-35-110. While the code contains specific statutory maximums for each class of felony, the actual sentence is based, in part, upon a defendant's criminal history, a history which places a defendant in either Range I, II, or III. There are presumptive sentences for each felony based upon

14

a range meaning, for example, a defendant who is convicted of aggravated burglary as a Range I offender faces a lesser sentencing range than a defendant convicted of the same crime as a Range II offender.

The record reflects that, on December 3, 2001, Petitioner was sentenced as a Range I offender for numerous crimes relating to the possession and distribution of narcotics, and was sentenced as a Range I offender. (Docket No. 3-7). He was sentenced in this case on May 29, 2002, as a Range II offender. (Docket No. 3-6).

The fact that Petitioner was sentenced as a Range I offender slightly less than six months before his sentencing in this case does not mean that he was *required* to be sentenced as a Range I offender. Petitioner's sentence for his drug offenses was pursuant to a negotiated plea agreement, and it is not uncommon for the State to make certain concessions in order to secure a guilty plea, including an agreement that a defendant will be sentenced pursuant to a lower Range classification. See, Davis v. State, 313 S.W.3d 751, 764 (Tenn. 2010) (noting that, by pleading guilty, defendant obtained significant concessions, including that he would be sentenced as a Range I offender, even though he qualified as a Range II offender); State v. Taylor, 2008 WL 2670180 at *3 (Tenn. Crim. App. 2008) (agreeing to allow a defendant to be sentenced within a particular Range "is a legitimate bargaining tool").

Regardless, the issue under Strickland is whether counsel made a serious error which prejudiced Petitioner. That is not the case because Petitioner was clearly a multiple offender under state law.

Tenn. Code Ann. § 40-35-106, upon which Petitioner relies, provided at the time of his sentence that a multiple offender was a defendant who had received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within

15

the next two (2) lower felony classes[.]" Tenn. Code Ann. § 40-35-106 (a)(1). A defendant who is found to be a multiple offender "shall receive a sentence within Range II." Id. § (d).

Here, Petitioner was deemed a multiple offender because he had previously been convicted of possessing with intent to sell 26 grams of cocaine, a Class B felony, and possessing with intent to sell a Schedule II narcotic, a Class C felony. His present convictions were for crimes ranging from Class A felonies (the especially aggravated kidnapping charges in violation of Tenn. Code Ann. § 39-13-305(a)(1)) to Class E felonies (evading arrest with a vehicle in violation of Tenn. Code Ann. § 39-16-603 and reckless endangerment in violation of Tenn. Code Ann. § 39-13-103). None of the crimes were more than two classes higher than his previous convictions. See, State v. Martin, 2011 WL 1225754 at *9 (Tenn. Crim. App. 2011) (defendant convicted of a Class B felony was properly designated a multiple offender where he had a prior Class C felony conviction and a Class D felony conviction); State v. Culbertson, 2008 WL 65327 at *13 (Tenn. Crim. App. 2008) (upon conviction of a Class C felony, defendant could be deemed multiple offender where he had two prior Class E felony convictions); State v. Vick, 2006 WL 722173 at *9 (Tenn. Crim. App. 2006) (for defendant to be multiple offender for purposes of especially aggravated kidnapping conviction, he must previously have been convicted on at least two Class C felonies or higher).[3] Because Petitioner was properly deemed to be a multiple offender based upon his prior record, he did not suffer any prejudice as a result of counsel's failure to object to that designation.

### 3. *Certificate of Appealability*

---

[3] Petitioner's reliance upon State v. Vann, 2003 WL 170277 at **7-8 (Tenn. Ct. Crim. App. 2003) is misplaced. While the decision indicates defendant, with two prior felony and eight misdemeanor convictions, was classified as a Range I offender, the propriety of that designation was simply not an issue before the court. Rather, the question was whether the trial court erred in failing to find, as a mitigating factor, that defendant had no intent to violate the law and defendant's criminal history was listed merely to show the record supported the trial court's decision.

When the district court denies the merits of a claim in a habeas corpus action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), with the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because Petitioner has not made a substantial showing of the denial of a constitutional right in relation to his ineffective assistance of counsel claims, a certificate of appealability will not issue with respect to claims one, two and five.

**B.** *Blakely* **Issues – Claims Three and Four**

In claims three and four, Petitioner asserts that the state courts erred in failing to properly apply the Supreme Court's decision in Blakely. The essence of his argument is that his sentence was unlawfully enhanced based upon a number of factors which were not presented to, and decided by, the jury.[4]

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Subsequently, the Court in Blakely held the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303. "In other words, the relevant 'statutory

---

[4] The Court notes that in claim three Petitioner states the appeals court failed to apply Blakely on direct review. His Memorandum, however, indicates this is an overstatement because he recognizes that the appeals court did, in fact, discuss Blakely but, in his view, did not adequately address it to the facts presented in this case. The Court considers claims three and four together because both involve what Petitioner characterizes as impermissible judicial fact-finding at sentencing, and the core of each involves Blakely.

17

maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 304-04.

In this case, the jury was provided with a general verdict form as to each count (Docket No. 17-5 at 128-134), but Petitioner's sentence was enhanced pursuant to several of the enhancement factors set forth in Tenn. Code Ann. § 40-13-144. Specifically, Petitioner's sentence was increased by the judge because he had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" (factor 1); the offense involved more than one victim (factor 3); Petitioner had no hesitation about committing the crime when the risk to human life was great (factor 10); the crimes were committed while Petitioner was on bail (factor 13); and the crimes were committed under circumstances where the potential for bodily injury to the victim was great (factor 16).

At the time of sentencing, Blakely had not been decided. However, Blakely was decided shortly before the decision was issued on direct appeal and was controlling. See, Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past").

On direct appeal, the Tennessee Court of Criminal Appeals discussed Blakely in a footnote, observing that the decision "calls into question the continuing validity of our current sentencing scheme." Fuller, 2004 WL 1562546 at *14 fn2. The court then wrote:

> In any event, the application of enhancement factors (1) and (13) would not violate the rule established in Apprendi because factor (2) [sic] is based upon prior criminal convictions and factor (13) was admitted by each defendant in this case. . . . Moreover, neither defendant has contested on appeal the application of enhancement factor (16). In consequence, it remains our view that the sentences imposed by the trial court were warranted under the circumstances.

Id. (internal citation omitted). Apart from Blakely, the court found enhancement factor three (multiple victims) should not have been applied because there were separate counts relating to Mr. and Mrs. Woods, and enhancement factor ten (risk to human life) should not have been applied to the robbery and kidnapping charges because "'there is necessarily a high risk to human life and the great potential for bodily injury whenever a deadly weapon is used.'" Id. at 13 (citation omitted). Nevertheless, the appeals court found Petitioner's sentence "justified." Id. at 14.

Blakely was also raised in the post-conviction proceedings. On appeal from the denial of Petitioner's request for post-conviction relief, the Tennessee Court of Criminal Appeals quoted its prior Blakely discussion in its entirety and then opined that petitioner "simply disagrees with our decision," and that the "issue has been addressed fully on direct appeal and is not subject to further review . . . through a post-conviction proceeding." Fuller, 2010 WL 4674276 at *8.

The state court's treatment of Petitioner's Blakely claims raises questions which are unanswered by the present briefing and particularly the briefing by the State. In its response to Petitioner's arguments, the State merely argues that the state courts rejected the Blakely issue, copies the entire discussion regarding Blakely from the post-conviction appellate opinion, and then conclusorily asserts that "petition has failed to show that the Court of Criminal Appeals decision is an unreasonable application of clearly established federal law." (Docket No. 16 at 19).

With the exception of the enhancement for Petitioner's prior criminal history, his Blakely claims do not warrant such a summary dismissal. For example, the appeals court indicated that Petitioner admitted he was on bond when the offenses were committed. Petitioner claims he made no such admission, and the Court has not found any such direct concession during its independent review of the record. The appeals courts also observed that the Petitioner did not argue about enhancement factor 16, but whether that was something which should have been raised in the

19

absence of Blakely is unclear. Further, while the appeals court found that the trial court improperly relied upon two other factors but that the overall sentence was nevertheless "justified" and "reasonable," this does not answer the question of whether that was a reasonable application of Blakely within the meaning of 28 U.S.C. § 2254(d)(1). See, Rompilla v. Beard, 545 U.S. 374, 380 (2005) (citation omitted) (for purposes of the language in Section 2254(d)(1), "[a]n 'unreasonable application' occurs when a state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case").

Even though the Court finds that the Blakely issues need to be addressed in more detail, the Court also observes that, ultimately, the question will be whether any alleged error under Blakely was harmless. See, Washington v. Recuenco, 548 U.S. 212, 218-219 (2006) ("failure to submit a sentencing factor to the jury . . . is not structural error); Villagarcia v. Warden, Noble Corr. Inst., 599 F.3d 529, 536 (6th Cir. 2010) (pursuant to Recuenco, Blakely errors subject to harmless error review). An error is harmless "unless it 'had [a] substantial and injurious effect or influence'" on the decision at issue. Fry v. Pliler, 551 U.S. 112, 116 (2007) (citation omitted). The controlling question for a harmless error analysis under Blakely is whether a defendant "would actually have received a lesser sentence absent the Blakely violation." Baker v. Voorhies, 329 Fed. Appx. 393, 402 n.7 (6th Cir. 2010) (citing, Villagarcia, 599 F.3d at 536-38).

Accordingly, the parties will be ordered to file supplemental briefs on the Blakely claims raised by Petitioner. Those briefs shall discuss whether any Blakely violation occurred and whether any alleged Blakely violation amounted to harmless error.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's claims relating to the alleged ineffective assistance of counsel as set forth in claims one, two and five will be denied and those claims dismissed with prejudice. A certificate of appealability will not issue with respect to any of those claims.

The Court will defer ruling on the merits of Petitioner's <u>Blakely</u> claims as set forth in claims three and four pending further briefing by the parties on whether a <u>Blakely</u> violation occurred and whether any such violation amounted to harmless error.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE