UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTONIO FULLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-01064 |
| | ) | Judge Sharp |
| DWIGHT BARBEE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

# M E M O R A N D U M

**I.  Introduction**

Petitioner Antonio Fuller was convicted of aggravated burglary, aggravated robbery, especially aggravated kidnapping, evading arrest, and reckless endangerment. He is serving an aggregate prison sentence of fifty-six years. In November 2010, he filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Docket No. 1). He raised several claims, including ineffective assistance of counsel and sentencing errors under *Blakely v. Washington*, 542 U.S. 296 (2004). In June 2011, the court dismissed the ineffective assistance claims and deferred ruling on the *Blakely* claims pending further briefing by the parties. (Docket Nos. 22 and 23).

Fuller appealed the portion of the order dismissing his ineffective assistance claims. (Docket No. 31). On August 31, 2011, the Sixth Circuit dismissed the appeal on the grounds that the order appealed from disposed of fewer than all claims or parties involved in the action and did not direct entry of a final, appealable judgment under Federal Rule of Civil Procedure 54(b), the partial dismissal was not an immediately appealable "collateral order," and appellate jurisdiction was not invoked because the court had not entered a final decision. (Docket No. 41).

1

After the appeal was dismissed, Fuller filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). (Docket No. 42). He argued that, based on a recent decision from the Tennessee Supreme Court, *State v. White*, 362 S.W.3d 559 (Tenn. 2012), his two convictions for aggravated kidnapping should be vacated. The court denied the motion on the ground that Rule 60(b) was not applicable because there had been no final judgment in the case. (Docket No. 44).

Fuller since has filed two motions for summary judgment (Docket Nos. 47 and 57) and two motion to amend (Docket Nos. 55 and 56). The court will address the motions to amend herein.

## II. Standard for Evaluating Motions to Amend

The court must now determine whether Fuller should be permitted to amend his original § 2254 petition to add additional claims. Pursuant to 28 U.S.C. § 2242, a federal *habeas* petition may be amended according to the requirements set forth in Federal Rule of Civil Procedure 15. *See Anderson v. United States*, No. 01-2476, 2002 WL 857742, at *3 (6th Cir. May 3, 2002); *Oleson v. United States*, No. 00-1938, 2001 WL 1631828 (6th Cir. Dec. 14, 2001)(stating that the mandate of Fed. R. Civ. P. 15(a), that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially raised in a timely § 2255 motion). In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, *i.e.*, if it could withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir.1992). Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir.1990).

**III.     Analysis**

In his first motion to amend, Fuller seeks to add claims that his kidnapping convictions violate due process. (Docket No. 55). In his second motion to amend, Fuller repeats his due process claims and asserts that he is actually innocent of the crime of especially aggravated kidnapping. (Docket No. 56).

**A.     First Motion to Amend**

Fuller's first motion to amend (Docket No. 55) advances two proposed new due process claims. For the first claim, Fuller relies *White*, the Tennessee Supreme Court case issued in March 2012 which reconsidered the interplay between kidnapping and other felonies with overlapping elements, like rape and robbery, committed in connection with the kidnapping. There, the Tennessee Supreme Court held that a jury instruction which failed to ask the jury to determine whether a victim's removal or confinement was "essentially incidental" to the accompanying felony offense of aggravated robbery violated the defendant's due process rights. *Id.* at 577-78. More specifically, the court held that trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the underlying felony. *Id.* at 578.

Fuller contends that his due process rights were violated because the jury instruction on his charges of especially aggravated kidnapping (*See* Docket No. 17, Addendum 1, Volume 5 at pp. 85-86) was identical to the jury instruction given in *White*, 362 S.W.3d 559, 579-80. In his case, as in *White*, the jury was not instructed on the question of whether the victim's removal or confinement was essentially incidental to the accompanying felony.

Although the Tennessee Supreme Court in *White* expressly overruled parts of *State v. Fuller,*

3

172 S.W.3d 533 (2005), in reaching its decision,[1] the court also held that its decision should not be "construed as creating a new standard for kidnapping. Instead, [the court was] merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *White,* 362 S.W.3d at 578. Consequently, the court cautioned that its opinion should not be construed as "articulat[ing] a new rule of constitutional law or requir[ing] retroactive application." *Id.*

To the extent that Fuller is asserting a new claim based on the holding in *White*, any such claim is clearly unexhausted because Fuller has not previously raised it in a state court proceeding. Regardless, *White* did not create a new rule of federal law, and the court clarified that it did not create a new rule of state law and that its ruling was not to be applied retroactively.

Even if *White* was retroactive, the decision was largely dependent upon the court's finding that the evidence in that case was equivocal regarding whether the defendant's movement or confinement of the victim was essentially incidental to the accompanying robbery. In Fuller's case, the Tennessee Supreme Court did not find the evidence to be equivocal. Rather, the court held that

> the binding of Ms. Woods was a confinement that was not essentially incidental to the robbery but had significance independent of it. The confinement lessened the risk of detection while Fuller and Betty accomplished their goal of locating the correct townhouse. In addition, the confinement created a significant danger to Ms. Woods and increased her risk of harm as demonstrated by the additional assault she suffered when the men returned. Under these circumstances, the confinement of Ms. Woods rose to a level sufficient to support dual convictions for especial aggravated

---

[1] *White* determined that the separate due process analysis required by *Fuller* "was not the most workable manner of addressing a kidnapping conviction that accompanied a separate offense," *State v. Cecil*, 409 S.W.3d 599, 606 (Tenn. 2013), and adopted a standard under which trial courts have an obligation to fully instruct the jury on the statutory language of the kidnapping statutes, holding that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." *White,* 362 S.W.3d at 577.

4

kidnapping of Ms. Woods and aggravated robbery.

*State v. Fuller*, 172 S.W.3d 533, 537, 538 (Tenn. 2005).[2] Application of *White* therefore would not have helped Fuller, even if it had been made retroactive to cases that were not in the appellate pipeline at the time of the decision. *See State v. Cecil*, 409 S.W.3d 599, 608 (Tenn. 2013)(noting that the Tennessee Supreme Court's language in *White* was intended to prevent use of the ruling for collateral attack but, under the "pipeline approach," *White* applies to all actions pending on the date of the decision and to all causes of action arising thereafter).

Most importantly, the Tennessee Supreme Court's decision in Fuller's case was not contrary to and did not involve an unreasonable application of clearly established federal law, nor did it result in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d). The Due Process Clause of the Fourteenth Amendment simply requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charges. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The jury in Fuller's case found that each element of the especially aggravated kidnapping charges had been proven beyond a reasonable doubt, and the Tennessee Supreme Court expressly considered whether Ms. Woods' kidnapping was merely "incidental" to the robbery such that dual convictions for robbery and

---

[2]On post-conviction review, the Tennessee Court of Criminal Appeals stated that "our supreme court found that Petitioner did not bind Ms. Woods with duct tape for the sole purpose of facilitating the robbery" because "the evidence clearly showed that the money was taken from the bedroom dresser prior to her confinement." *Fuller*, 2010 WL 4674276, at *4 (Tenn. Crim. App. July 13, 2004).

5

kidnapping would offend due process. Its decision upholding the convictions was neither contrary to law nor unreasonable.

Consequently, the court finds that granting Fuller's motion to amend his petition to add his proposed due process claim pursuant to the *White* decision would be futile. For those reasons, Fuller's motion to amend his original § 2254 motion to add a new ground for relief pursuant to Tennessee Supreme Court's decision in *White* (Docket No. 55), will be denied.

The second claim Fuller seeks to add to his § 2254 petition is a Federal due process claim based on *Fiore v. White*, 531 U.S. 225 (2001). Petitioner Fiore was convicted of violating a state statute prohibiting the operation of a hazardous waste facility without a permit. After Fiore's conviction became final, the state supreme court interpreted the statute for the first time, making it clear that Fiore's conduct was not within its scope. However, the state courts refused to grant Fiore collateral relief. The Supreme Court granted certiorari "in part to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." *Id.* at 226. However, in response to a question certified by the Supreme Court, the state supreme court clarified that its decision interpreting the statute was not a new interpretation of the law; instead, the state supreme court explained, the decision was a correct statement of the law when Fiore's conviction became final. Therefore, the Supreme Court found that retroactivity was not an issue. Fiore's conviction ultimately was overturned by the Supreme Court as violative of Due Process, but not for reasons that would be helpful to Fuller in this case.[3]

The Tennessee Supreme Court, like the state supreme court in *Fiore*, has clearly expressed

---

[3]The Supreme Court found that the state could not convict Fiore for conduct that the state's criminal statute, as properly interpreted, did not prohibit.

that *White* did not create a new rule of state law. *White,* 362 S.W.3d 559, 578. Instead, the Tennessee Supreme Court merely provided a definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty. *Id.* There is no issue of retroactivity here. As such, the court finds that granting Fuller's motion to amend his petition to add his proposed Federal due process claim pursuant to the *Fiore* decision would be futile.

**B.     Second Motion to Amend**

In his more recent motion to amend (Docket No. 56), Fuller argues again that his convictions for especially aggravated kidnapping violate due process, citing *State v. White* and *Fiore v. White*. The court previously addressed Fuller's proposed due process claims and, for the same reasons set forth above, the court finds that Fuller's motion to amend to add those claims will be denied as futile.

To the extent that Fuller is attempting to assert a claim of actual innocence, "[a] claim of actual innocence alone is insufficient to warrant habeas relief." *Herrera v. Collins*, 506 U.S. 390 (1993); *Cress v. Palmer,* 484 F.3d 844, 854 (6th Cir. 2007). Rather, proven actual innocence creates a gateway to excuse procedural default in presenting some other constitutional claim:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L.Ed.2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim

7

> requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321.

*Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). Fuller appears to be arguing that he can establish his actual innocence by demonstrating an intervening change in the law. That is to say, Fuller believes the *White* court's 2012 decision–which came after Fuller's case became final--stands as an intervening change in Tennessee state law; that law should be retroactively applied to Fuller's case; and, when retroactively applied, the facts would demonstrate that Fuller was actually innocent of especially aggravated kidnapping as it is now defined and charged to the jury after *White*.

The most obvious flaw in Fuller's theory is that the Tennessee Supreme Court plainly articulated in *White* that its decision was not meant to be applied retroactively because the court did not mean for its decision to set forth a change in the law. 172 S.W. 3d at 578. *White* remains good law. *See State v. Weilacker,* 2014 WL 4402123, at *10 (Tenn. Crim. App. Sept. 8, 2014)(applying *White* and reiterating "in this majority's view, the law is clear and unequivocal that the due process concerns outlined in *White* are present regardless of whether the crimes at issue involve two separate named victims). Accordingly, *White* cannot be applied retroactively to the petitioner's case and, therefore, reliance on *White* cannot establish Fuller's actual innocence.

The robbery in this case was the taking of the seventy dollars from the dresser, but the criminal activity did not end when the robbery was completed. After the money was taken, Fuller bound Ms. Woods' mouth with duct tape and taped her arms behind her. Fuller then bound Mr. Woods' arms and legs with duct tape, and Mr. Woods was forced into a car to go look for Little

8

Jason's residence. Mr. Woods estimated that forty minutes passed from the time the men entered the townhouse until they forced Mr. Woods to leave with them. After showing Fuller and Betty where Little Jason lived, the men brought Mr. Woods back to his townhouse and Betty took Mr. Woods up to the bedroom and placed him in bed with his wife, who remained bound. Betty again threatened the couple by sticking a gun in their mouths that if they told anyone about the crimes they would be killed. Given these facts, it cannot be said that the kidnappings were done to facilitate a robbery since the acts which constituted the kidnappings occurred **after** the robbery.

Fuller argues that the state appellate courts did not review his especially aggravated kidnapping conviction specifically as to Mr. Wood. (Docket No. 56 at p. 13 n.1). On this point, Fuller is correct. The Tennessee Court of Criminal Appeals only analyzed Fuller's conviction for especially aggravated kidnapping of Ms. Woods; in the four paragraphs devoted to the appellate court's analysis of Fuller's especially aggravated kidnapping convictions, the court does not even mention Mr. Woods. *See Fuller*, 2004 WL 1562546, at **7-8 (Tenn. Crim. App. July 13, 2004). Then, in a one-sentence summary disposition in the last paragraph of its decision, the court affirmed both Fuller and Betty's convictions for the especially aggravated kidnapping of Mr. Woods. *See id.* at *16. The Tennessee Supreme Court granted review to determine whether the Court of Criminal Appeals erred in reversing Fuller and Betty's convictions for the especially aggravated kidnapping "of **one** of the victims"– Ms. Woods. *Fuller*, 172 S.W.3d 533, 534 (Tenn. 2005)(emphasis added). The opinion does not address Fuller's conviction for especially aggravated kidnapping of Mr. Woods.

However, and despite his assertion to the contrary, Fuller did not brief the issue of whether his conviction for especially aggravated kidnapping of Mr. Woods should be overturned. (Docket

No. 17, Attach. 8 at pp. 3-4). The section of Fuller's appellate brief entitled "Especially Aggravated Kidnaping" [sic] begins with the sentence: "The kidnaping [sic] of Quantrissa Sherrell [Woods] was an integral part of the robbery in this case and a separate conviction cannot be sustained." *Id.* at p. 3. The brief does not discuss Fuller's conviction for especially aggravated kidnapping of Mr. Woods. *See id.* at pp. 3-4. It is not surprising that the state appellate courts did not consider at great length, or at all, a claim that Fuller himself did not bother to brief.

In any event, Fuller raises the issue now in support of his proposed claim that he is actually innocent of especially aggravated kidnapping of both Mr. and Ms. Woods because the facts that forms the basis for those convictions are essentially incidental to the aggravated robbery. (Docket No. 56 at p. 13). They were not.

As to Mr. Woods, Fuller argues that the removal of Mr. Woods from his townhouse did not prevent him from summoning help because Ms. Woods was able to call 911 during Mr. Wood's absence; did not lessen Fuller's risk of detection because Fuller ultimately was captured by the police; and did not create a significant danger or increase the victim's risk of harm because Mr. Woods did not see Fuller after being returned home after locating the intended robbery victim. (*Id.* at pp. 13-14). However, Fuller ignores that, during the forty minutes that Fuller and Betty bound Mr. Woods and removed him from his townhouse, Mr. Woods was unable to summon help for himself, his wife, his newborn baby, or his five-year-old daughter. And while it is true that Fuller was ultimately captured by the police, Fuller's acts of binding of Mr. Woods, removing him from his townhouse, and forcing him to accompany Fuller and Betty in locating Little Jason's were not "incidental" to the accompanying felony offense of aggravated robbery; the acts did not even facilitate the robbery as they occurred after the taking of the seventy dollars. Betty instructed Fuller

10

to bind Mr. Wood, and Fuller complied, so that Mr. Wood would not be able to escape and so that he would act as an unwilling guide in the perpetrators' quest to locate Little Jason's residence.[4]

As to Ms. Woods, Fuller argues, as he did with respect to Mr. Woods, that her confinement was essentially incidental to the accompanying robbery. He "acknowledges that Ms. Woods' testimony would support a finding that she was under some degree of restraint during the immediate instance she was threatened with a deadly weapon," (Docket No. 56 at p. 10), but argues that her confinement "was not for a substantial period of time." (*Id.* at p. 11). He further argues that Ms. Woods' confinement did not prevent her from summoning help, as she was able to dial 911 and answer a return call, and that her confinement did not lessen his risk of detection, because the police captured him. (*Id.* at p. 12). However, Ms. Woods' confinement lessened the risk of detection while Fuller and Betty were locating the correct townhouse. And, even though Ms. Woods was able to dial 911, she did so under extraordinary circumstances, and was so afraid that Fuller and Betty would return that she hung up before being able to speak with the operator. When the operator called her back, she testified that she answered the phone and "told everything that I kn[e]w in that split second . . . and got back into the bed, the way I was when they left out." *Fuller*, 2004 WL 1562546, at *2. As the Tennessee Supreme Court recognized, "Even after Mrs. Woods had summoned help by communicating with the 911 dispatcher, she could not leave the bed for fear that

---

[4]Fuller's facts are more analogous to the facts in *State v. Richardson*, 251 S.W.3d 438, 445 (Tenn. 2008), in which the court found that the confinement of the victim to the restaurant office and her movement and confinement to the fan room were beyond that necessary to consummate the attempted especially aggravated robbery. The court found that, when Richardson confined the victim in the office after she had provided him with the combination to the safe, this prevented the victim from summoning help by moving her farther away from the stairway, which was her only avenue of escape. The location similarly lessened Richardson's risk of detection. The movement and confinement also created a significant danger to the victim and increased her risk of harm. The confinement to the fan room, after the victim had sustained severe head injuries from the beating in the office, increased her risk of harm by leaving these injuries untreated. Thus, the court found that Richardson's convictions for especially aggravated kidnapping did not violate due process. *Id.* at 446.

she would jeopardize the lives of her family." *Fuller*, 172 S.W.3d at 537-38. Finally, the evidence shows that Ms. Woods' confinement created a significant danger and increased her risk of harm. When Fuller and Betty returned, Betty threatened to kill her and placed the barrel of a rifle in her mouth. Again, as the Tennessee Supreme Court reasoned, "This additional assault demonstrates that the separate act of confinement after the robbery created a significant danger to Mrs. Woods and undoubtedly increased her risk of harm." *Id*. at 538. Fuller makes much of the fact that Ms. Woods did not see him after Betty returned upstairs with Mr. Wood, but it was Fuller who bound Ms. Woods with duct tape in the first place.

Even applying the new standard under *White,* the evidence shows that the confinement of Mr. and Mrs. Woods within their townhouse and the removal of Mr. Woods from the townhouse were not "essentially incidental" to the accompanying robbery. Consequently, *White* does not require a finding that the petitioner is actually innocent of especially aggravated kidnapping.

"Federal habeas relief is reserved for those prisoners who committed an act that the law no longer considers criminal." *Webb v. Coakley*, 2013 WL 1819237, at *5 (N.D. Ohio April 20, 2012)(citing *Bousley v. United States*, 523 U.S. 614, 620 (1998))(where substantive federal criminal statute no longer reaches certain conduct, prisoners should still have access to review conviction for an act that the law does not make criminal.)). Such is not the case here. As with his first motion to amend, Fuller's second motion to amend his original § 2254 motion to add new grounds for relief (Docket No. 56) will be denied.

**IV.    Conclusion**

For the reasons explained herein, the court finds that Fuller's motions to amend his original

12

§ 2254 petition (Docket Nos. 55 and 56) will be denied as futile. 28 U.S.C § 2242; Fed. R. Civ. P. 15.

An appropriate order will be entered.

_____
Kevin H. Sharp
United States District Judge