UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTONIO FULLER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>DWIGHT BARBEE, Warden, )<br>)<br>Respondent. ) | No. 3:10-cv-01064<br>Judge Sharp |

## **M E M O R A N D U M**

**I.     Introduction**

Petitioner, Antonio Fuller, an inmate at the Charles Bass Correctional Facility in Nashville, Tennessee, is serving a fifty-six year sentence for his involvement in a home invasion robbery and kidnapping. Fuller has filed a *pro se* petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Docket No. 1).

Presently pending before the court are the parties' supplemental briefs (Docket Nos. 29 and 32) on the petitioner's *Blakely* claims. Also pendings are two *pro se* motions for summary judgment (Docket Nos. 47 and 57) filed by the petitioner, to which respondent Dwight Barbee has responded in opposition (Docket Nos. 51 and 71).

Having fully considered the record, the court finds that an evidentiary hearing is not needed in relation to the petitioner's *Blakely* claims, and that the petitioner is entitled to no relief on those claims.

**II.     Procedural History**

Fuller was convicted of one count of aggravated burglary, one count of aggravated robbery,

1

two counts of especially aggravated kidnapping, one count of evading arrest, and one count of reckless endangerment. The trial court sentenced Fuller, a Range II offender, to ten years for aggravated burglary, eighteen years for aggravated robbery, thirty-five years for each especially aggravated kidnapping, seven years for evading arrest, and four years for reckless endangerment and ordered partially consecutive service for an effective sentence of fifty-six years. (Docket No. 17, Addendum 1, Vol. 1, pp. 41-46).

On direct appeal of his convictions and sentence, the petitioner challenged the following: (1) the sufficiency of the convicting evidence; (2) whether his convictions for especially aggravated kidnapping violated the rule established in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991); (3) whether the trial court erred by refusing to provide a range of punishment instruction to the jury; and (4) whether the trial court misapplied certain enhancement factors and should not have imposed consecutive sentencing. (Docket No. 17, Addendum 2, Docs. 1-2). On July 13, 2004, the Tennessee Court of Criminal Appeals affirmed the Fuller's judgments of conviction on all counts with the exception of his conviction for especially aggravated kidnapping of Ms. Woods, which the court reversed. (*Id.*, Doc. 4). The appeals court concluded that the conviction for both aggravated robbery and especially aggravated kidnapping in relation to Ms. Woods violated the principles set forth in *Anthony*, 817 S.W.2d 299, that a confinement, movement, or detention incidental to an accompanying felony (like robbery) is not itself sufficient to support a separate conviction for kidnapping. *State v. Fuller*, 2004 WL 1562546 (Tenn. Crim. Ct. App. 2004).

The State of Tennessee filed an application for permission to appeal the reversal of the petitioner's conviction on the especially aggravated kidnapping count as to Ms. Woods to the Tennessee Supreme Court, which the court subsequently granted. (Docket No. 17, Addendum 2,

Doc. 5). On September 21, 2005, the Tennessee Supreme Court reversed the judgment of the Court of Criminal Appeals and reinstated the petitioner's especially aggravated kidnapping conviction as to Ms. Woods. *State v. Fuller*, 172 S.W.3d 533 (Tenn. 2005). In doing so, the court observed that *Anthony* had been modified by *State v. Dixon*, 97 S.W.2d 532 (Tenn. 1997), which held that the "*Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping, where the only restraint utilized was that necessary to complete the act of rape or robbery." *Id.* at 535. Since Ms. Woods was bound after the seventy dollars was taken from the dresser, and she and Mr. Woods were questioned about Little Jason's residence while bound, *Anthony* did not bar the petitioner and his co-defendant from being convicted of both the aggravated robbery and especially aggravated kidnapping of Ms. Woods. With this ruling, the petitioner was placed in the same position as immediately after trial – his convictions and sentence were affirmed.

On June 8, 2006, the petitioner filed a *pro se* petition for post-conviction relief with the Davidson County Criminal Court, claiming that both trial and appellate counsel were ineffective. (Docket No. 17, Addendum 3, Vol. 2, pp. 21-68). Additionally, Fuller contended that the length of his sentence violated *Blakely's* proscription that any fact, other than a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum must either be admitted by a defendant or decided by a jury in its verdict. Fuller filed amended petitions for post-conviction relief on January 5, 2007, July 31, 2007, and December 26, 2007, with the Davidson County Criminal Court. (Docket No. 17, Addendum 3, Vol. 2, pp. 115-39).

Following an evidentiary hearing, the post-conviction court denied relief (Docket No. 17, Addendum 3, Vol. 1, pp. 261-74), and the petitioner appealed to the Court of Criminal Appeals, raising the following claims: (1) whether trial counsel's assistance was ineffective because he failed

to object to the trial court's instruction to the jury concerning the lesser included offense of aggravated kidnapping; (2) whether trial counsel's assistance was ineffective because he failed to object to the trial court's consideration of the petitioner's prior convictions in determining his sentencing range and the length of his sentence; (3) whether trial counsel's assistance was ineffective because he failed to raise issues one and two in the motion for new trial; (4) whether appellate counsel's assistance was ineffective because he failed to raise issues one and two on appeal; and (5) whether the length of his sentence violated the principles set forth in *Blakely*. (Docket No. 17, Addendum 4, Docs. 1, 3).

On September 28, 2010, the Court of Criminal Appeals affirmed the denial of post-conviction relief. (Docket No. 17, Addendum 4, Doc. 3). The petitioner did not file an application for permission to appeal to the Tennessee Supreme Court thereafter.

In November 2010, Fuller filed the instant *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Docket No. 1). He raised several claims, including ineffective assistance of counsel and *Blakely* sentencing errors. On June 7, 2011, the court entered an order and memorandum dismissing claims one, two, and five relating to alleged ineffective assistance of counsel. (Docket Nos. 22 and 23). The court deferred ruling on counts three and four, Fuller's *Blakely* claims, pending further briefing by the parties on whether a *Blakely* violation occurred and whether any such violation amounted to harmless error. (*Id.*)

Fuller appealed the portion of the order dismissing his ineffective assistance claims. (Docket No. 31). On August 31, 2011, the Sixth Circuit dismissed the appeal on the grounds that the order appealed from disposed of fewer than all claims or parties involved in the action and did not direct entry of a final, appealable judgment under Federal Rule of Civil Procedure 54(b), the

4

partial dismissal was not an immediately appealable "collateral order," and appellate jurisdiction was not invoked because the court had not entered a final decision. (Docket No. 41).

After the appeal was dismissed, Fuller filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). (Docket No. 42). He argued that, based on a decision from the Tennessee Supreme Court, *State v. White*, 362 S.W.3d 559 (Tenn. 2012), his two convictions for aggravated kidnapping should be vacated. The court denied the motion on the ground that Rule 60(b) was not applicable because there had been no final judgment in the case. (Docket No. 44).

Fuller subsequently filed two motions for summary judgment as to his *Blakely* claims (Docket Nos. 47 and 57) and two motions to amend his petition to add new claims (Docket Nos. 55 and 56).

On July 5, 2011, the respondent filed his supplemental answer in support of his contention that Blakely's petition should be denied. (Docket No. 29). The respondent also filed responses in opposition to Fuller's motions for summary judgment. (Docket Nos. 51 and 71).

On September 29, 2014, the court denied Fuller's motions to amend. (Docket Nos. 73 and 74). The court will address Fuller's remaining *Blakely* claims herein.

### III. Facts

The events leading up to the petitioner's convictions and sentence were described by the Tennessee Supreme Court as follows:

> During the early morning hours of December 22, 2000, the defendants, Antonio Fuller and Marcellus Betty, broke into the Goodlettsville townhouse of George Woods, III, and Quantrissa Sherrell Woods. Mr. Woods was sleeping, and Mrs. Woods was nursing their ten-day-old son. Fuller and Betty ran into the bedroom. Betty approached Mrs. Woods' side of the bed, pointing a rifle at her and the baby.

5

Fuller walked to the other side, aiming a shotgun at Mr. Woods. Betty demanded, "Where's the dope? Where's the money?" Mrs. Woods responded, "We don't have any drugs or money. You know, we just work. All the money we have is up on the dresser, about seventy dollars." Betty threatened to kill the couple if they did not give him drugs and money.

When Betty asked where "Little Jason" was, Mr. Woods realized that the men had broken into the wrong townhouse. Mr. Woods told them that Little Jason's cousin lived in another townhouse in the complex and drove a car similar to his. Betty demanded that Mr. Woods show them the correct townhouse. Betty took the seventy dollars from the dresser and ordered Fuller to bind the couple with duct tape. Mrs. Woods' mouth was covered, and her arms were taped behind her. Mr. Woods' arms and legs were bound, and he was forced outside the townhouse. Mr. Woods estimated that forty minutes passed from the time the men entered the townhouse until Mr. Woods left with them.

Soon thereafter, Mrs. Woods' five-year-old daughter ran into the bedroom. Because Betty had warned Mrs. Woods that he knew she had a child in the other room, Mrs. Woods told her daughter, "You have to go back to your room and lay down and not say anything, because, if they catch you in here, they're going to kill us, thinking you've called the police." Then, with her arms still bound behind her, Mrs. Woods called 911 from a phone on the nightstand. Mrs. Woods hung up before her call was answered, however, fearing that Betty or Fuller was still in the townhouse. When the 911 dispatcher called back, Mrs. Woods answered and quickly explained the situation. Mrs. Woods was able to communicate despite the duct tape still covering her mouth because she had licked her lips before the tape was applied, thus loosening it. After hanging up the phone, she got back into the bed in the same position as the men had left her.

> After Mr. Woods showed Fuller and Betty where Little Jason's cousin lived, the three men returned to the Woodses' townhouse. Betty took Mr. Woods up to the bedroom and placed him in the bed with his wife, who remained bound. Betty again threatened the couple, stating, "I'll kill you if you mess my sting up." Betty repeated the threats as he went back and forth sticking the barrel of the rifle in each victim's mouth. Betty ordered the couple to face the wall, and then he fled.
>
> Mr. and Mrs. Woods worked together to remove the duct tape from each other. When free, the couple packed a bag and gathered their children. They were running toward the door when the police arrived. Upon seeing Fuller and Betty drive out of the parking lot of the complex, an officer attempted to pull them over. Both men were apprehended after a high-speed chase.
>
> Following a jury trial, Fuller and Betty were each convicted [on all charges against them].

*Fuller*, 172 S.W.3d at 534-36.

## IV. General Standards Governing Review of § 2254 Petitions

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court may grant a writ of *habeas corpus* on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The state court's factual findings are presumed to be correct and they can be contravened only if the petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1). The petitioner is entitled to an evidentiary hearing if he alleges sufficient grounds for issuance of the writ, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing. *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002).

Further, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citation omitted). Claims which are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002).[1]

## V. Analysis of *Blakely* Claims

In claims three and four of his petition for writ of *habeas corpus*,[2] the petitioner asserts that the state courts erred in failing to properly apply the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004). The essence of his argument is that his sentence was unlawfully

---

[1] "In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Alley,* 307 F.3d at 386.

[2] For review by this court to be appropriate, the petitioner must have exhausted each of his claims. Here, the State has conceded that, to the extent it understands his claims, the petitioner has fairly presented each claim to the state court. (Docket No. 16 at p. 1).

8

enhanced based upon a number of factors which were not presented to, and decided by, the jury.

At the time of sentencing, *Blakely* had not been decided. However, *Blakely* was decided shortly before the decision was issued on direct appeal and, therefore, was controlling. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past").

As ordered by the court, the respondent has submitted additional briefing on the petitioner's *Blakely* claims. (Docket No. 29). The respondent first argues that the consideration of Fuller's prior convictions by the Court of Criminal Appeals to enhance his sentence did not violate *Blakely*. (*Id.* at p. 11). Next, the respondent argues that the record clearly demonstrates the jury would have found the two remaining sentencing factors relief upon by the Court of Criminal Appeals beyond a reasonable doubt; therefore, any error of not having the jury find those enhancement factors was harmless. (*Id.*)

The petitioner, on the other hand, contends that there is "grave doubt" as to whether–had they been given the opportunity–the jury would have found that he committed the crimes while he was on bail and that the crimes were committed under circumstances where the potential for bodily injury to Ms. Woods was great. (Docket No. 57 at p. 6). Therefore, maintains the petitioner, the *Blakely* errors were not harmless. (*Id.*)

A statutory sentencing scheme that allows a judge to enhance a sentence based on factual findings not found by a jury, admitted by the defendant, or reflected in the jury verdict is unconstitutional. *Blakely*, 542 U.S. at 303. In *Blakely*, the Supreme Court reiterated its previous holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original) (citations omitted).

Although a *Blakely* error arises from the lack of a jury verdict or a defendant's admission with respect to a sentencing factor, it may be harmless error. *See Washington v. Recuenco*, 548 U.S. 212 (2006) (*Blakely* error is subject to harmless error review). The Supreme Court has explained that in cases involving review of a state court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht's* more "state-friendly standard" for cases involving collateral review of state court decisions. *Hereford v. Warren,* 536 F.3d 523, 532-33 (6th Cir. 2008). Under *Fry*, relief is appropriate only if the court has "grave doubt" as to whether a jury would have found aggravating factors beyond a reasonable doubt. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); *Hereford*, 536 F.3d at 533; *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003); *see also Neder v. United States*, 527 U.S. 1, 17 (1999) (finding that, when a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless). The controlling question for a harmless error analysis under *Blakely* is whether a defendant "would actually have received a lesser sentence absent the *Blakely* violation." *Baker v. Voorhies*, 329 Fed. Appx. 393, 402 n.7 (6th Cir. 2010).

In sentencing the petitioner, the trial court found Fuller to be a Range II, multiple offender. (Docket No. 17, Addendum 1, Vol. 6, pp. 35-40.) At that time, a sentence in "Range II" was as follows:

(1) For a Class A felony, not less than twenty-five (25) nor more than forty (40) years;

(2) For a Class B felony, not less than twelve (12) nor more than twenty (20) years;

(3) For a Class C felony, not less than six (6) nor more than ten (10) years;

(4) For a Class D felony, not less than four (4) nor more than eight (8) years; and

(5) For a Class E felony, not less than two (2) nor more than four (4) years.

*See Tenn. Code Ann*. § 40-35-112(b) (2001). The statutory scheme in place at the time of Fuller's sentencing hearing provided for "presumptive" sentences. The presumptive sentence was the midpoint in the range for Class A felonies and the minimum in the range for all remaining felonies. *See Tenn. Code Ann*. § 40-35-210(c),(d) (2001). Trial courts then were to enhance and/or mitigate a defendant's sentence based upon the application of enhancement and mitigating factors. *See Tenn. Code Ann*. § 40-35-210(d),(e) (2001).

The petitioner was sentenced to more than the presumptive sentence for each of the convictions based on his prior convictions and other factual findings made by the trial judge. (Docket No. 17, Addendum 1, Vol. 6, pp. 35-40).[3] Specifically, in arriving at the sentences, the trial

---

[3]According to the petitioner, his sentence for aggravated burglary was enhanced from a presumptive six year sentence to a ten year sentence; his sentence for aggravated robbery was enhanced from a presumptive twelve year sentence to an eighteen year sentence; his sentence for especially aggravated kidnapping was enhanced from a presumptive twenty-five year sentence to a thirty-five year sentence; his sentence for evading arrest was enhanced from a presumptive four year sentence to a seven year sentence; and his sentence for reckless endangerment was enhanced

11

court applied the following enhancement factors to each of Fuller's convictions:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (3) The offense involved more than one (1) victim;
>
> (13) The felony was committed while on bail;
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high; and
>
> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

(Addendum 1, Vol. 6, pp. 35-40); *see Tenn. Code Ann*. § 40-35-114 (1997).

On direct appeal, the Tennessee Court of Criminal Appeals determined that the trial court appropriately applied enhancement factors one, thirteen, and sixteen to each of Fuller's convictions and correctly determined that there were no applicable mitigating factors. (Docket No. 17, Addendum 2, Doc. 4, p. 14). The Court of Criminal Appeals addressed the impact of *Blakely* on the petitioner's sentences and determined that the sentences imposed by the trial court were nonetheless warranted under the circumstances:

> The United States Supreme Court's recent opinion in *Blakely v. Washington*, 542 U.S. __, 159 L. Ed. 2d 403, 124 S. Ct. 2531, 2004 U.S. LEXIS 4573 (2004), calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. *Id.* The Court observed that "the 'statutory maximum' for *Apprendi* purposes is the maximum

---

from a presumptive two year sentence to a four year sentence. (Docket No. 57 at pp. 1-2).

> sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 2004 U.S. LEXIS 4573 at *14 (emphasis in original). Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." 2004 U.S. LEXIS 4573 at *31 (emphasis in original).
>
> In any event, the application of enhancement factors (1) and (13) would not violate the rule established in *Apprendi* because factor (2) [sic] is based upon prior criminal convictions and factor (13) was admitted by each defendant in this case. *See Apprendi*, 530 U.S. at 490. Moreover, neither defendant has contested on appeal the application of enhancement factor (16). In consequence, it remains our view that the sentences imposed by the trial court were warranted under the circumstances.

(Docket No. 17, Addendum 2, Doc. 4, p. 14).

The record indicates that Fuller had six felony convictions for various drug offenses, as well as prior convictions for trespassing, evading arrest, resisting arrest, and a weapons offense. (Docket No. 17, Addendum 1, Vol. 6, pp. 3-4, 15-16, 36; Vol. 7, Presentence Report, pp. 4-7). The trial court's use of the petitioner's prior convictions to enhance his sentence was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent. Rather, it was entirely consistent with the holdings of *Blakely* and *Apprendi*. *See* 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.")(emphasis added); *Calhoun v. Jackson*, 2007 WL 2782745, at *12 (S.D. Ohio Sept. 24, 2007)("*Blakely* confirms that prior criminal convictions are an exception to its holding.")

In addition to being enhanced based upon Fuller's prior convictions, the petitioner's sentence was enhanced by a non-jury finding that the petitioner was on bail at the time he committed the felonies. (Docket No. 17, Addendum 1, Vol. 6, pp. 35-40); *see Tenn. Code Ann*. § 40-35-114 (13)

(2001). The petitioner argues that "there's no where in the record that the petitioner specifically admitted to being on bail (13) at sentencing because the petitioner gave no testimony at sentencing." (Docket No. 3 at p. 24). Even so, the evidence presented relevant to this issue during Fuller's sentencing hearing was uncontroverted. (Docket No. 17, Addendum 1, Vol. 6, pp. 12-35). The State called the court clerk, Barbara Wise, who testified that Fuller had been arrested on charges in case number 2000-B-1992 on February 24, 2000, and had posted bond the same day. (*Id.* at p. 12). Wise explained that Fuller remained out on bond until on December 22, 2000, when he was arrested after committing the Woods' home invasion and robbery. (Docket No. 17, Addendum 1, Vol. 6, p. 20-21). Fuller did not challenge this testimony in any way and, in counsel's argument to the trial court, he implicitly acknowledged that Fuller had been on bond at the time he committed the home invasion. (Addendum 1, Vol. 6, pp. 12-13, 16, 18, 22.) Likewise, on direct appeal, Fuller did not dispute the trial court's finding that he committed the offenses while on bond. (Docket No. 17, Addendum 2, Doc. 1 at pp. 5-7). Considering the evidence, there can be no question that the jury would have found beyond a reasonable doubt that the petitioner was on bond when he committed the instant offenses.

In affirming the length of petitioner's sentences, the Court of Criminal Appeals also relied upon the enhancement factor under Tennessee law that the crime was "committed under circumstances under which the potential for bodily injury to a victim was great." (Addendum 1, Vol. 6, pp. 35-40); *see Tenn. Code Ann.* § 40-35-114 (16) (2001). The record is replete with uncontroverted evidence supporting this enhancement. Victims Mr. and Ms. Woods testified that during the early morning hours of December 22, 2000, only ten days after the birth of their new son, Fuller and his co-defendant broke into the Woods' residence wearing masks and armed with guns.

(Addendum 1, Vol. 2, pp. 20-22, 24-25, 46, 94-97). One of the men pointed a gun at Mr. Woods and the other man held a gun towards Ms. Woods and her baby and began threatening to shoot and kill them. (Addendum 1, Vol. 2, p. 25-28, 100). After Fuller and his co-defendant took the victims' money, Fuller bound Ms. Woods' mouth with duct tape and taped her arms behind her. (Addendum 1, Vol. 2, p. 29-30). Fuller then bound Mr. Woods' arms and legs with duct tape, and Mr. Woods was forced into a car to go look for Little Jason's residence. (Addendum 1, Vol. 2, pp. 101, 103, 110-11). After showing Fuller and Betty where Little Jason lived, the men brought Mr. Woods back to his townhouse and Betty took Mr. Woods up to the bedroom and placed him in bed with his wife, who remained bound. Betty again threatened the couple by sticking a gun in their mouths and informing them that if they told anyone about the crimes they would be killed. (Addendum 1, Vol. 2, pp. 33, 112-14).

Fuller and his co-defendant then fled the scene in a white vehicle, leaving the condominium complex at a high rate of speed. (Addendum 2, Doc. 4, pp. 3-4). At that time, Officer Mumaw attempted to pull over the defendants, but they would not stop. (*Id*.) Fuller led the officer on a high-speed chase through both a residential area and a business area, where pedestrians were present, at speeds of over 100 miles an hour before wrecking his car in a curve. (*Id*.) When Officer Mumaw approached the defendants, each of whom was lying on the ground, Fuller grabbed his shotgun and began to point it at the officer. (*Id*.) Officer Mumaw had to kick the shotgun away from Fuller. (*Id*.) Upon recovering the guns, Officer Mumaw found they were loaded with ammunition. (Addendum 1, Vol. 3, pp. 217-19).

Fuller argues that, because he did not accompany his co-defendant back into the Woods' townhouse after Mr. Woods showed the men where Little Jason lived and because he did not place

15

the gun in the victims' mouths, there is a question as to whether the jury would have found beyond a reasonable doubt that Fuller committed the crimes under circumstances where the potential for bodily injury to his victims was great. (Docket No. 57 at p. 6). However, even if Fuller was not present during the final assault on the victims, the evidence as to Fuller's conduct over the course of the events on the evening of December 22, 2000, demonstrates that there is little doubt, and certainly no "grave doubt," that the jury would have made such a finding.[4]

In summary, the court finds that the petitioner is not entitled to *habeas* relief on the basis of his *Blakely* claims. The Tennessee Court of Criminal Appeals found that three enhancement factors supported the petitioner's sentence. The consideration of Fuller's prior convictions to enhance his sentence did not violate *Blakely*. Because the record clearly demonstrates that the jury would have found the two remaining sentencing factors relied upon by the Court of Criminal Appeals, the error of not having the jury find those enhancement factors was harmless. As such, the Court of Criminal Appeals' finding that the petitioner did not prove a deprivation of his right to jury trial is not contrary to or an unreasonable application of clearly established federal law.

When the district court denies the merits of a claim in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), with the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

---

[4]*See Morris v. Parker*, 2014 WL 2956422, at *39 (W.D. Tenn. June 30, 2014)(finding that petitioner was not entitled to relief because any *Blakely* error was harmless where court was free of "grave doubt" that a jury would have found beyond a reasonable doubt the enhancements used to increase petitioner's presumptive sentence and "the state court undoubtably would have imposed the same sentence absent the *Blakely* error."); *Parker v. Allen*, 542 Fed. Appx. 435 (6th Cir. Sept. 3, 2013)(finding that, to the extent the petitioner argued "against the weight of the record to support the enhancements" applied to increase his presumptive sentence, to accept his argument would be to "ignore a near-insurmountable amount of relevant, persuasive, and uncontroverted evidence based upon speculation of what the jury might have done were these enhancements put to it. That is not how a harmless-error analysis works.")

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of the denial of a constitutional right in relation to his *Blakely* claims, a certificate of appealability will not issue with respect to claims three and four of the petition.

## VI. Conclusion

For the foregoing reasons, the petitioner's *Blakely* claims as set forth in claims three and four, will be denied, and those claims dismissed with prejudice. A certificate of appealability will not issue with respect to any of those claims. The petitioner's motions for summary judgment (Docket Nos. 47 and 57) will be denied as the petitioner has failed to show that no genuine issue of material fact exists or that he is entitled to judgment as a matter of law.

An appropriate order will be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE